Pages 1 - 26

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE EDWARD M. CHEN

```
JANE DOE, et al,                    )
                                    )
            Plaintiffs,             )
                                    ) No. C 23-2865 EMC
   vs.                              ) No. C 24-3352 EMC
                                    ) No  C 24-3625 EMC
KAISER FOUNDATION HEALTH PLAN,      )
INC., et al,                        )
                                    )  San Francisco, California
            Defendants.             )  Wednesday
                                    )  October 30, 2024
_____)  3:00 p.m.
```

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

**For the Doe Plaintiffs:**

                  KESSLER TOPAZ MELTZER & CHECK, LLP
                  280 King of Prussia Road
                  Radnor, Pennsylvania 19087
        BY:  **TYLER S. GRADEN, ESQ.**
               **MELISSA L. YEATES, ESQ.**

                  CARELLA BYRNE CECCHI OLSTEIN BRODY
                    & AGNELLO
                  5 Becker Farm Road
                  Roseland, New Jersey 07068
        BY:  **KEVIN G. COOPER, ESQ.**

**For the Newton Plaintiffs:**

                  POTTER HANDY, LLP
                  100 Pine Street
                  Suite 1250
                  San Francisco, California 94111
        BY:  **JAMES MICHAEL TREGLIO, ESQ.**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

*Reported By:*  *Debra L. Pas, CSR 11916, CRR, RMR, RPR*
                *Official Reporter - US District Court*
                *Computerized Transcription By Eclipse*

**APPEARANCES:   (CONTINUED)**

**For the Sutter Plaintiffs:**
                    ROBERT ALLEN MACKEY, ESQ.
                    16320 Murphy Road
                    Sonora, California 95370


**For Defendant Kaiser Foundation Health Plan, Inc.:**
                    SHEPPARD MULLIN RICHTER & HAMPTON, LLP
                    1540 El Camino Real.
                    Suite 120
                    Menlo Park, California 94025
              BY:  TENAYA M. RODEWALD, ESQ.


                    SHEPPARD MULLIN RICHTER & HAMPTON, LLP
                    30 Rockefeller Plaza
                    24th Floor
                    New York, New York 10112 1540
              BY:  CHARLES L. GLOVER, ESQ.


**For Defendant Google:**
                    WILLKIE FARR & GALLAGHER, LLP
                    333 Bush Street
                    San Francisco, California 94104
              BY:  BENEDICT Y. HUR, ESQ.
                   ISABELLA CORBO, ESQ.
                   DAVID DENTON DOAK, ESQ.


**For Defendant Meta:**
                    GIBSON DUNN & CRUTCHER, LLP
                    One Embarcadero Center
                    Suite 2600
                    San Francisco, California 94111
              BY:  ELIZABETH KATHARINE McCLOSKEY, ESQ.

                         —   —   —

```
1   Wednesday - October  30, 2024                    2:59 p.m.

2                     P R O C E E D I N G S

3                         ---oOo---

4         THE CLERK:  Next case the court will be hearing is

5   Doe, et al, versus Kaiser Foundation Health Plan, Case No.

6   23-2865; Sutter versus Kaiser Foundation Health Plan, Case No.

7   24-3352; and Newton, et al, versus Kaiser Foundation Health

8   Plan, 24-3625.

9         Counsel please state your appearance for the record,

10  beginning with the plaintiffs.

11        MR. GRADEN:  Good afternoon, Your Honor.  Tyler Graden

12  with Kessler, Topaz on behalf of the Doe plaintiffs.

13        THE COURT:  All right.  Thank you.  Good afternoon.

14        MR. MACKEY:  Good afternoon, Your Honor.  Robert

15  Mackey on behalf of the Sutter plaintiffs.

16        THE COURT:  All right.  Thank you, Mr. Mackey.

17        MR. TREGLIO:  Good afternoon, Your Honor.  James

18  Treglio of Potter Handy on behalf of the Newton plaintiffs.

19        THE COURT:  All right.  Thank you.

20        MS. YEATES:  Good afternoon, Your Honor.  Melissa

21  Yeates of Kessler, Topaz, Meltzer and Check on behalf of the

22  Doe plaintiffs.

23        THE COURT:  All right.  Good afternoon.

24        MR. COOPER:  Finally, good afternoon, Your Honor,

25  Kevin Cooper of Carella Byrne on behalf of the Doe plaintiffs.
```

 1          THE COURT:  All right.  Thank you.

 2          MS. McCLOSKEY:  Good afternoon, Your Honor.  Elizabeth

 3  McCloskey of Gibson Dunn on behalf of Defendant Meta.

 4      And with me in the courtroom is Veronica Nauts, in-house

 5  counsel to Meta.

 6          THE COURT:  Okay.  Thank you.

 7          MR. HUR:  Good afternoon, Your Honor.  Ben Hur from

 8  Willkie Farr and Gallagher for defendant Google.

 9      I'm here with my colleagues, David Doak and Isabella

10  Corbo.

11          THE COURT:  Thank you.

12          MS. RODEWALD:  Good afternoon, Your Honor.  Tanaya

13  Rodewald of Sheppard Mullin on behalf of the Kaiser defendants.

14      And seated in the gallery is Charles Glover of Sheppard

15  Mullin as well.

16          THE COURT:  All right.  Thank you.

17      All right.  We're on for both Google's and Meta's motions

18  to sever.  I will tell you one thing I've done, to see whether

19  this is even worth exploring, is made an inquiry to my

20  colleagues -- Judge Orrick, has, I believe, the Meta case and

21  Judge Chhabria has the Google case, I think I have that right

22  unless it's reversed -- to see whether they would be inclined

23  to take the related case if there was severance.  Because if

24  they don't, then I'm not sure what there is to be gained by

25  severing, at least at this juncture, and then leaving those

cases out to wander, either staying here or going to some other

judge who doesn't -- there's no economies to be served.  But I

do now have a response and both of those potentially receiving

judges would relate the case.

So if I were to orphan off those two sets, they have a

home.  And they would have a home where there, obviously, would

be some economies, judicial economies to be gained, since I

think there is a large overlap and a particular -- my

understanding from some of the pleadings that I've read and

comments from Judge Orrick, he's not accepted every case, but

he's concentrating his Meta cases on those in the similar

health provider hospital sort of field and, indeed, some of the

plaintiffs in that case are Kaiser folks.  And I think that is

also somewhat true.  There are some Kaiser overlap with -- in

Judge Chhabria's cases.

So having done that homework, it does seem to me that

there are certainly some upsides in terms of efficiencies and

judicial economies, perhaps litigation economies generally, to

sever.  There would be some diseconomy in a sense that the case

would remain against Kaiser, but that case would have to -- I'm

not sure how you could avoid getting into what was done by --

allegedly by Google and Meta in -- on Kaiser's behalf.

So one could argue that that's sort of -- there's going to

be some replication there to some extent.  I'm not sure how

avoidable that is because whether you sever or not it sounds

1    like those issues may have to be looked at in a couple of

2    different fora.

3        And then the question of whether or not the Meta and

4    Google cases from each other should be severed; and if I were

5    to keep the case, that could be done at any point.  That -- may

6    be that's appropriate for trial.  That may be appropriate at

7    another juncture.  I don't know.

8        But if I were to sever both cases and leave them to find

9    their way to Judge Chhabria's courtroom and Judge Orrick's

10   courtroom, that sort of answers that first question.

11       So I guess that's what I'm inclined to do, but I -- you

12   know, to the extent that there's opposition to that, I will

13   hear it at this point.

14           **MR. TREGLIO:**  James Treglio for the Newton plaintiffs.

15       So, Your Honor, I think the biggest problem I would have

16   with that point, with the severance, Your Honor, is -- is the

17   question of -- comes down to specifically the California

18   Confidentiality of Medical Information Act, which is the claim

19   that we have against Kaiser.

20       The -- the case law starting with Sutter health, but

21   continuing on with most -- sorry, most recently the *Vigil*

22   *versus Muir Medical Group*, that's 2022 84 Cal. App 5th 197,

23   deals with the question of whether or not the information that

24   was transmitted was actually viewed.

25           **THE COURT:**  I'm sorry.  Information --

 1       **MS. McCLOSKEY:**  I'm sorry.  Whether the information,

 2  the confidential medical information that was transmitted to in

 3  this case Google and Meta would have been actually viewed.

 4       And that's something that we would have to do essentially

 5  three times in three different cases to show what was actually

 6  viewed and then utilized by these companies, but more

 7  specifically with Kaiser in the case that's present before us.

 8       Now, that could change.  There could be a Motion to Compel

 9  arbitration.  We could have all sorts of things, but as it

10  currently stands, Your Honor, if these two cases -- if Google

11  and Meta's cases were severed out, I would be in a position --

12  the plaintiffs and Newton would be in a position of having to

13  do third-party subpoena discovery to find out what information

14  was taken and then viewed, and then I could be receiving three

15  different sets of discovery in what should be one case.  And

16  that would certainly prejudice the plaintiff in this -- the

17  plaintiffs in this matter because, again, this is one of the --

18  to prove whether something is actually viewed is now one of

19  the -- one of the elements that has to be proven in a

20  Confidentiality of Medical Information Act case.  That's a

21  primary concern.  We have to show not just what was sent, but

22  what was received and then viewed.

23       Certainly, there's some technological aspects, the use of

24  bots and things that like that, but, again, that would require

25  discovery that we would get from Google and Meta in the course

1    of these proceedings.

2        And that's why ultimately, Your Honor, these two -- these

3    two defendants were named in the Newton complaint, so as to

4    ensure we could gather that information.

5        **THE COURT:**  I hear what you're saying.

6        Let me ask, I mean, as a practical matter, if there is

7    severance and the cases are then transferred to Judges Orrick

8    and Chhabria, obviously, there is going to be discovery there,

9    I think.

10       I think -- I forget exactly what stage they are in, but

11   they are a little further ahead, because I know Judge Orrick

12   has had the case for some time now.  Wouldn't the answer or the

13   data be evidence, if it hasn't already surfaced, in the context

14   of those two other proceedings?

15       **MS. McCLOSKEY:**  It's possible, Your Honor, but then we

16   also run into another problem, which is all the information

17   that we're talking about here is inherently confidential or

18   proprietary information.  So it would be covered under

19   protective orders.

20       So these protective orders, some of which have already

21   been entered into in -- in the *In Re Meta Pixel* and in *In Re*

22   *Google* cases would almost certainly prohibit my clients from

23   using the information gathered in that, in those cases in

24   this -- in the present case.

25       So that on would be a key problem, that you have a

roadblock that's been stipulated to.

    **THE COURT:** And, yet, you would be able to presumably obtain that information, at least in some form, under some protective order by third-party subpoena here; right?

    **MS. McCLOSKEY:** Presumably yes, Your Honor. But then, of course, that also leads to another issue, which is once we have that information and use that information, that information then goes effectively to three different juries to make factual determinations on the causes of action present here.

    And so then you have this potential of the fact finder, three different fact finders making factual determinations based on the exact same evidence.

    **THE COURT:** Well, you have that problem whether I sever or not, because if I keep the case, the jury will hear -- or maybe two different juries will hear the Google and the -- and the Meta case. Then you've got Judge Chhabria's jury determining the Google.

    So we have that potential conflict however you slice it. I'm not sure how to avoid that.

    **MS. McCLOSKEY:** Well, Your Honor, ideally if everything sort of stays together, then it would go to one jury. If the jury makes two different determinations based on the facts presented, based on the claims alleged to Kaiser versus to Google and Meta, then that would be -- obviously,

```
 1   that would be a different story.
 2        But that's where I think the issue is.  You have this
 3   potential -- fairly, you know, serious potential of having
 4   differing factual determinations made by different fact
 5   finders.
 6        Now, that --
 7             THE COURT:  The --
 8             MS. McCLOSKEY:  I'm sorry, Your Honor.  I didn't
 9   mean...
10             THE COURT:  I was just thinking out loud whether some
11   kind of agreement could be reached across these cases in terms
12   of coordinating shared discovery.  We have to work around
13   the -- work with the confidentiality issues, maybe with the
14   protective orders, whether, you know, this can be done.
15        I mean, we coordinate cases all the time.  Sometimes they
16   are in different parts of the country.  Sometimes they are in
17   state and federal courts, and you have joint discovery
18   hearings, and you have cross purpose uses and everything.
19   Seems like within the same courthouse we ought to be able to
20   figure out something here.
21             MS. McCLOSKEY:  I don't disagree with that, Your
22   Honor.  Again, I'm -- if we deal with what we have in front of
23   us.
24        And so, as I said, this -- you know, this could also be a
25   mooted point because, again, Kaiser is taking the position that
```

1    my clients have signed arbitration agreements or have been --

2    or their claims are subject to arbitration.

3        So certainly if that -- if that were to be true, and I

4    can't speak to that one way or another, then maybe this point

5    is mooted anyway.  But at least as it sits right now, I

6    would -- with what we have, there is no agreement to share

7    discovery.  There is no Motion to Compel arbitration pending.

8        You know, so I -- in that sense, Your Honor, I would say

9    perhaps the question of severance is premature until some of

10   those other issues are meted out and dealt with.

11            **THE COURT:**  All right.  Let me hear from the defense

12   side.

13            **MR. HUR:**  Ben Hur for Google.

14       Your Honor has basically made all of the arguments.  That

15   is right.  The judicial economy point is absolutely key.

16       Judge Chhabria has this case.  If you keep the claims

17   against Google, then essentially the same claims about the same

18   conduct are going to be adjudicated by two different judges and

19   the risk of inconsistent results is significant.

20       As it relates to discovery, Your Honor, you're right.

21   Discovery will be made in the Chhabria case.  We get to that

22   stage.  And to the extent there is overlapping discovery here,

23   we will, of course, produce it.  We can work opposing counsel

24   to figure out a way to make that efficient.  We have done that

25   in other cases.  So I'm really not worried about the discovery

1    issues because to the extent it's relevant to the Kaiser case,

2    we will provide it.

3        We can't have a complete cross use agreement, Your Honor,

4    because there are a number of other parties in the *Doe v.*

5    *Google* case, other than Kaiser -- I'm sorry.  There are a

6    number of other healthcare companies that are at issue other

7    than Kaiser.  In fact, there are six that are currently named

8    in the Second Amended Complaint.  Of those five are being

9    litigated separately.

10       So you have six healthcare providers that are named in the

11   *Doe v. Google* case.  Five of them already have their own

12   separate cases.  If the Court severs Google from this case, it

13   will be six for six.

14       And so, Your Honor, this is how it's gone down in this

15   case and with these healthcare providers.  There is really no

16   reason to keep Google or, frankly, Meta in this case.

17           **THE COURT:**  But is the discovery as against Google and

18   what it does with the information, viewed or not viewed,

19   et cetera, et cetera, I mean, that's common to all those cases,

20   I assume?  There's going to be coordinated discovery on that

21   question?

22           **MR. HUR:**  Yes, Your Honor.  In the *Doe v. Google* case,

23   yes, there will.  Because all of the classes consist of

24   healthcare providers, yes, we will be coordinating.

25       And certainly how the technology is used by those

 1  providers is similar in many regards, not always identical.

 2  That discovery will be coordinated.

 3      To the extent that there is discovery about Kaiser, in

 4  particular, or Google's -- Kaiser's use of Google analytics,

 5  that discovery can certainly be provided to the plaintiffs in

 6  this case.

 7      **THE COURT:**  And is there any objection to coordinating

 8  discovery such that, for instance, counsel would be able to

 9  participate if there's a 30(b)(6) depo or something like that,

10  that even though the case is not before -- this portion of the

11  case is not -- the Kaiser case here is not before Judge

12  Chhabria, that you could have coordinated discovery so that as

13  we do in state and federal cases, for instance, everyone can

14  participate?

15      **MR. HUR:**  Yes, Your Honor.  I think we could work

16  something out so that it wouldn't overlap.

17      Now, there are -- again, because there are a number of

18  healthcare providers at issue in that case, it may not be a

19  complete overlap or full participation, but we can certainly

20  work it out, Your Honor.

21      **THE COURT:**  Right.  It might have to be phased or

22  segregated somehow.  But the main idea is you don't want to

23  expose your clients to two depositions.  And it makes sense to

24  have it efficient.  And counsel here, I assume, would

25  coordinate with the other plaintiff's counsel and try to

1    eliminate duplication, but it seems like that would be and

2    efficient way to do it.

3        **MR. HUR:**  That's right, Your Honor.

4        For example, if the plaintiff's here served a subpoena and

5    there were a bunch of depo topics, we could try to coordinate

6    it so that we did one depo, if possible.

7        **THE COURT:**  And the possibility of inconsistent

8    verdicts, I think that's -- from what I can see, that's almost

9    inherent and that is some things are going to be decided, for

10   instance, before Judge Chhabria if the case is transferred, but

11   that issue, I don't know if that's binding on Kaiser here.  It

12   may have to be retried for binding -- I'm not sure.  I have to

13   think about one-way or two-way collateral estoppel here.

14       But, I mean, there -- you can imagine the issue still

15   surfacing in this case.  If this case went to trial, what

16   Google did is going to be at issue again.

17       **MR. HUR:**  That's right, Your Honor.  What Google did

18   could be at issue, but it would be tangential.  You wouldn't be

19   actually deciding Google's liability.  Instead that would be

20   decided in the Judge Chhabria case.

21       Whereas, if you kept the claims, then you're both deciding

22   Google's liability, and that significantly heightens the risk

23   of inconsistent results.

24       **THE COURT:**  All right.  So the ultimate question could

25   be in conflict; whereas, there could -- may be collateral

```
1  conflict.  You could get a collateral consequence here with a
2  different finding, but it wouldn't -- it wouldn't be in square
3  conflict with a verdict reach on the ultimate question of
4  liability before Judge Chhabria.
5          MR. HUR:  Exactly, Your Honor.
6          THE COURT:  Does Meta have any comments in Judge
7  Orrick's case?
8          MS. McCLOSKEY:  Elizabeth McCloskey on behalf of Meta.
9      Your Honor, I don't have too much to add.  I think you
10 articulated it very well, of course, and Meta is similarly
11 situated to Google, so much of Google's counsel's remarks
12 apply.
13     I think it's a little hard to say exactly how coordination
14 of discovery would work, but we would obviously work
15 cooperatively with plaintiff's counsel here to figure out what
16 they need to pursue their case and how most efficiently to get
17 it to them.
18         THE COURT:  And do you know, has either Judge Orrick
19 or Judge Chhabria appointed a discovery either master or
20 magistrate judge in their cases?
21         MS. McCLOSKEY:  In many of our cases, Judge DeMarchi
22 has been handling discovery.
23     Meta had actually requested, had moved for coordinated
24 discovery amongst several of the Pixel-related cases that are
25 pending before other judges in this district, and plaintiffs
```

1    had opposed that.  So discovery is not formally consolidated.

2        But Judge DeMarchi is handling several cases and Beeler

3    has at least one and perhaps two as well.

4        **THE COURT:**  Okay.  Well, maybe if I do go forward with

5    this plan, you all can meet-and-confer and see if you can make

6    a proposal about, you know, how to coordinate discovery and

7    whether it makes sense for me to refer discovery to one of the

8    MJs that already has that so that they can coordinate.  It will

9    be easier rather than having different judges trying to do

10   that.

11       **MS. McCLOSKEY:**  Yeah.  And certainly if this case were

12   severed and consolidated with Judge Orrick's case, then Judge

13   DeMarchi would there handle any discovery-related issues, and

14   she's done a wonderful job addressing any discovery issues thus

15   far in the case.

16       **THE COURT:**  Mr. Hur, in the Google case is there a --

17   is Judge DeMarchi on that one as well?

18       **MR. HUR:**  No, Your Honor.  It's Judge van Keulen.

19       **THE COURT:**  Sorry.  Who?

20       **MR. HUR:**  Judge van Keulen.

21       **THE COURT:**  All right.  Well, I'll give you -- I'll

22   plaintiff's counsel one more.  If can have the last word.  Any

23   further thoughts I'll hear it now.

24       **MR. TREGLIO:**  So the only -- the one last thought on

25   this, Your Honor, of course, is -- is the question of the fact

 1   that neither the *In Re Meta Pixel* case or the *Doe versus Google*

 2   case have been certified as classes.

 3       And so that's the one other aspect, is that, again, this

 4   question of the timing, while they are similar issues, if there

 5   was a denial of class certification in those cases, which are

 6   much broader and so there is that -- there is always that

 7   potential, then what do we do here?

 8       So that -- again, that falls back into that thought

 9   process of, okay, this might be, again, a little bit -- a

10   little bit premature in terms of severance at this stage,

11   especially given where we are procedurally with this case and

12   where the other two cases are pending.

13       **THE COURT:**  On the other hand, if discovery is

14   underway, it may make sense to do that part.

15       I suppose you're raising the prospect of if there is no

16   class cert and you're left with all individual cases, what is

17   the judge going to do in that case, the presiding Judge

18   Chhabria and Orrick?

19       And I guess we would have to -- and you're saying programs

20   the economies may not then be obtained and realized under some

21   circumstances?

22       **MR. TREGLIO:**  Absolutely, Your Honor.  You could very

23   well see these cases -- you're talking about six different --

24   or a number of different hospital entities or medical provider

25   entities.  You could very well see those cases at the class

```
1    certification stage split out into six different cases or more
2    different cases.
3         And so that -- again, we're running into that scenario of
4    that potential problem was well.
5              THE COURT:  Any comments from either Google or Meta?
6         If you look forward and a time comes when there is not
7    sort of consolidation by class certification and you're left
8    with a bunch of disparate cases, including this severed case,
9    would it make sense to revisit the question or should we commit
10   now?
11             MR. HUR:  Your Honor, I think we should commit now.
12   Because decisions are going to be made about these claims in
13   the Doe v. Google case, and I'm sure in the Meta case as well.
14   And so there is already a risk of inconsistent results if the
15   Court is keeping these claims.
16        And sort of taking hypotheticals about what might happen
17   at class cert, I think is -- is dangerous in and of itself,
18   Your Honor.  Even if we entertain the hypothetical that counsel
19   posed and there are a number of different subclasses, you're
20   still -- it's still going to be more efficient than this Court
21   having Google in this case.
22        So even in that hypothetical situation, Your Honor,
23   judicial economy would served by severing the claims now.
24             THE COURT:  All right.  Any comments from Meta?
25             MS. McCLOSKEY:  Yeah.  I'll echo Mr. Hur's comments.
```

1    You know, there is a lot of ongoing work relating to discovery

2    now.  So I think the judicial efficiency that will be gained

3    even prior to the decision on class cert is significant based

4    on kind of the volume and scope of discovery in these matters.

5              **THE COURT:**  All right.  Well, I think the decision

6    should be made now.  If it becomes evident at some point to the

7    presiding judge that receives these cases that may not make

8    sense, I mean, there's always remand or -- like, MDL remands or

9    something.

10         But, you know, since we're all in the same courthouse,

11   it's not that hard to coordinate.  It may be the tracking of

12   each case, at some point it may get disaligned and sort of

13   referral back may be complicated, but I think that's pretty

14   speculative at this point.

15         For all the reasons that we've been talking about, it

16   makes sense now to sever and indicate to the potential

17   transferee judges that the cases have been severed and are

18   ready to be related.  And I expect, based on my correspondence

19   with the two judges, those two claims will be related

20   respectively.

21         That leaves this case here, and so we should talk about

22   scheduling in this case.  I think that's what the status

23   conference statement indicated.  Once a decision is made, how

24   do you want to proceed here?

25             **MR. TREGLIO:**  Yes.  Thank you, Your Honor:

1    **MR. GRADEN:**  Good afternoon, Your Honor.  Tyler Graden

2    from Kessler Topaz.

3    **THE COURT:**  All right.  Thank you.

4    **MR. GRADEN:**  So we are co-lead plaintiffs, co-lead

5    class counsel under the 23(g) order Your Honor entered.  So we

6    will be leading the consolidated class from here on out.

7    I missed my opportunity to agree wholly with defendants.

8    I'm glad that we have -- have severed these -- these two

9    defendants and we can now concentrate on Kaiser.

10    **THE COURT:**  Okay.

11    **MR. GRADEN:**  In terms of scheduling, I do think we

12    need to take another look at the plaintiffs that have been in

13    these other cases.  I think we can vet them in about a month

14    and get a consolidated complaint filed.  I would say around

15    December 6th, if that's okay with Your Honor.

16    **THE COURT:**  Okay.

17    **MR. GRADEN:**  From there, I don't think that there

18    really is all that much briefing that needs to be done on the

19    Motion to Dismiss.

20    As Your Honor will recall, there was a second Amended

21    Complaint that was filed.  A Motion to Dismiss was filed.  We

22    filed our opposition.  But the reply was taken off calendar in

23    light of the consolidation.  So I think a large portion of the

24    motion has already been briefed.

25    However, in light of the holidays that are coming up, I

think that a January 10th Motion to Dismiss date would be what
we would request.  It's about 35 days, taking into
consideration New Years and Christmas.  So with the --

      **THE COURT:**  What would have to be rebriefed, or are
you suggesting a new set of briefs looking like -- much like
the old briefs to be filed, or what are you...

      **MR. GRADEN:**  As it currently stands, I think it's
really almost identical.  I don't know if we will be adding new
claims or not.  It all depends on the vetting of the counsel.

    The two plaintiffs -- or the two plaintiff groups that are
in the Sutter and the Newton case, one plaintiff is from
Virginia, but we already have a Virginia class rep.  We already
have a Virginia subclass.  So those claims are already out
there and briefed.

    We also have a California rep, John Doe.  The Newton case
is all about -- they are California plaintiffs, so that's
already covered.

    Now, Mr. Doe, he did have his claims initially sent to
arbitration.  That is -- that was done without prejudice, so
that is before Your Honor again.  But as I understand it, it
may be a similar issue with the Newton plaintiffs as well.

    So I do think that there is some large overlap.  We do
continue to get, you know, calls and contacts from additional
plaintiffs.

    There are two states that we do not currently have as

```
 1  subclasses; one is Hawaii and one is Colorado.  To the extent
 2  we think an additional class rep from one of those states would
 3  be appropriate, we could, you know, potentially add that,
 4  although I do believe the plaintiffs that we have now could
 5  adequately cover those -- those two states.  So it's something
 6  that we just need to do a little bit more vetting on.
 7          THE COURT:  Well, it seems to me, just to make it
 8  clean, that once you file your consolidated Amended Complaint
 9  that there ought to be just a Motion to Dismiss based on what
10  you have in case you've got some changes or new -- I'd rather,
11  rather than trying to cross reference, just file a new Motion
12  to Dismiss, assuming that's what's going to happen.  It may
13  look a lot the same.  It's a lot of cutting and pasting, but
14  for my purposes it would be cleaner.
15          MR. GRADEN:  Understood, Your Honor.
16          THE COURT:  And right now your proposal -- I see
17  defense counsel has a comment -- but you built in sort of a
18  35-day period, although that does encompass the holidays, so I
19  don't know what you're views on that are.  But the main thing
20  is you would file the complaint by the 6th of December.
21  Motion to Dismiss --
22          MS. RODEWALD:  Tanaya Rodewald for the Kaiser
23  defendants.
24          THE COURT:  If you want to remove your mask, you can.
25  It's up to you.
```

1    **MS. RODEWALD:**  Respectfully, we would request 60 days.

2    We would actually prefer that we be able to meet-and-confer and

3    propose a more complete case schedule.

4        Obviously, the Motion to -- we will be -- we plan to at

5    least bring a renewed Motion to Dismiss.  We will be bringing

6    motions to compel arbitration against all of the California

7    plaintiffs.  So now there will be four plaintiffs subject to

8    motions to compel arbitration.  Plaintiff's counsel is

9    discussing adding new plaintiffs and new state law claims.

10       So, respectfully, 35 days, especially over the Christmas

11   holidays, is not sufficient for us to brief all of these

12   motions, and we would request at least 60 days.  But we

13   actually think that it would be more appropriate for the

14   parties to meet-and-confer and propose a new case schedule

15   within 14 days.

16       **THE COURT:**  All right.  That's what I assume was going

17   to happen; that there would be some meet-and-confer in light of

18   my ruling.

19       I can express my expectation that I don't want this to

20   drag on too long.  I mean, there has already been -- you know,

21   the parties are sort of familiar with many of the issues.

22       If there's going to be a Motion to Dismiss, if there's

23   going to be a Motion to Compel arbitration, I would expect that

24   to happen fairly quickly.

25       But with that general directive, I'm going to direct the

1    parties to meet-and-confer, come up with a, hopefully,

2    stipulated case schedule that gets us through at least class

3    cert stage.  I don't usually set a trial in a putative class

4    action until we've decided whether it's going to be class or

5    not.

6        So I -- if you could set out a schedule through that date

7    and include any interim dates for class-based discovery or

8    other discovery matters and disclosures and that sort of thing,

9    you can include that.

10        **MR. GRADEN:**  Thank you, Your Honor.

11        Just one clarification.  So we -- we have been litigating

12    this case for quite awhile.  There was an issue before with

13    class discovery versus merits discovery.  There was a request

14    to bifurcate, which Your Honor denied.

15        **THE COURT:**  Yes.

16        **MR. GRADEN:**  There was a motion before the Court on

17    what we're calling Phase 2 discovery, and Your Honor ruled that

18    the discovery shall be open in full if mediation failed.

19        We have now been before Judge Kang, who is doing a

20    wonderful job of moving this case along quickly with discovery

21    matters.

22        So I just say that because Your Honor did mention class

23    based discovery, and I just wanted to clarify.

24        **THE COURT:**  All right.  So, yeah.  I did not mean to

25    suggest bifurcation.  I just meant whatever discovery that

```
1   needs to happen prior to the class cert motion, you know, you

2   should have that in mind and whatever disclosures you might

3   want to work out in terms of expert disclosures in relation to

4   any class cert motions.  So we know if there are going to be

5   Daubert motions, which seem like these days are inevitable, I

6   just want all that accounted for.

7             MR. GRADEN:  Understood.  I just wanted to make sure.

8             THE COURT:  I did not mean to suggest I'm changing my

9   mind by bifurcating discovery.  I almost rarely, probably never

10  bifurcate discovery any more given the case law, so.

11       But sometimes it makes sense to concentrate on certain

12  things at the front end just to get class cert moving, leaving

13  some issues toward the end that aren't necessarily class cert.

14            MR. GRADEN:  We will take that into consideration.

15            THE COURT:  All right?  So given how long this case

16  has, you know, sort of been kicking around a bit, that's why I

17  made the comment that I expect this to be fairly expedited.

18  Maybe not 35 days, but, you know, something that works.  And

19  taking into account the holiday schedule as well.

20       All right.  With that, why don't I just set another

21  control date for a status conference, I don't know, four months

22  out.

23            THE CLERK:  February 11th at 2:30, Your Honor.

24            THE COURT:  Okay.  February 11th.  We can always

25  change that if you -- if there's a motion date, I will probably
```

1    readjust that and align that and double that up with a hearing.

2    But we will set that as a control date just so I can keep tabs

3    on what's going on here.  Okay?

4            **MR. GRADEN:**  Sounds great, Your Honor.  Thank you.

5            **MS. RODEWALD:**  Thank you.

6            **THE CLERK:**  This hearing is concluded).

7        (Proceedings adjourned.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATE OF OFFICIAL REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Friday, November 8, 2024